IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Richard Price Tucker, ) | Case No. 8:13-cv-00401-RMG-JDA |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| Russell Helbig, Chaplain, is sued in his ) | |
| personal-individual capacity, and in his ) | |
| official capacity for injunctive relief, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the Court on a motion to dismiss pursuant to Rules 12(b)(1) and/or 12(b)(6), or in the alternative, for summary judgment by Defendant Russell Helbig ("Helbig"). [Doc. 24.] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in pro se cases and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, filed this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a), on or about February 19, 2013.[1]  [Doc. 1.]  Defendant filed his motion to dismiss, or in the alternative, for summary judgment, on March 20, 2013.  [Doc. 24.]  By order filed March 21, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  It appears Plaintiff did not use the services of the prison mail to forward this pleading to the Court [*see*, Doc. 1-2]; accordingly, Plaintiff is not entitled to claim an earlier filing date as accorded by this rule.

advised of the dismissal/summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 27.] Plaintiff filed a response in opposition to the motion on April 18, 2013 [Doc. 32]. Defendant filed a reply on April 29, 2013 [Doc. 36]. Accordingly, the motion is now ripe for review.[2]

## BACKGROUND

Plaintiff is incarcerated at the Federal Correctional Institution Williamsburg in Salters, South Carolina ("FCI Williamsburg"). [Doc. 1 at 2.] Plaintiff alleges Defendant violated his constitutional and religious rights in various ways. [*Id.* at 3–6.] Specifically, Plaintiff alleges he was denied a Ceremonial Roast Meat Meal to be eaten with the Seder Plate (bitter herbs) as mandated by the Jewish Torah. [*Id.* at 3.] Plaintiff further alleges that, during Sukkot, Defendant provided Plaintiff and the Jewish community with a one-man Succah Tent to accommodate ten to twelve Jewish inmates, and that Defendant placed the tent in an area dedicated solely to pagan worship where Jews were not allowed to enter. [*Id.*]

Plaintiff seeks an injunctive order to enjoin Defendant from denying him a Ceremonial Roast Meat Meal for Passover to be eaten with the Seder Plate[3]; injunctive orders prohibiting Defendant from religious persecution and religious discrimination against the Jewish community; a declaratory order that Plaintiff can practice his Jewish religion free

---

[2] In conjunction with the Complaint, Plaintiff filed a motion for preliminary injunction [Doc. 3], and on March 20, 2013, Defendant filed a response in opposition to the motion for preliminary injunction [Doc. 25]. The District Court withdrew the reference to the undersigned as to the request for preliminary injunctive relief due to time considerations, and on March 21, 2013, the Court denied the motion for preliminary injunction relating to the Ceremonial Roast Meat Meal to accompany the Passover Seder Plate [Doc. 29]. The matter was returned to the undersigned for further pretrial proceedings. *Id.*

[3] As noted above, on March 21, 2013, the Court denied the motion for preliminary injunction relating to the Ceremonial Roast Meat Meal to accompany the Passover Seder Plate [Doc. 29].

2

from religious injustice; compensatory damages in the amount of $40,000; costs of this action; and any other relief the Court deems just under the circumstances. [*Id.* at 17.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under *Bivens***

In *Bivens*, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of *federal* constitutional rights. 403 U.S. at 389. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983[4]; federal officials cannot be sued under § 1983, however, because they do not act under color of *state* law. *Harlow v. Fitzgerald*, 457 U.S. 800, 814–20 (1982). Case

---

[4]Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law.

law involving § 1983 claims is applicable in *Bivens* actions and vice versa. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Mitchell v. Forsyth*, 511 U.S. 511, 530 (1985); *Turner v. Dammon*, 848 F.2d 440, 443–44 (4th Cir. 1988). To establish a claim under *Bivens*, a plaintiff must prove two elements: (1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States and (2) the defendant did so under color of federal law. *See Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted) (setting forth requirements for a § 1983 claim under color of state law); *see also Bivens*, 403 U.S. at 389 ("In [a previous case], we reserved the question whether violation of [the Constitution] by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct. Today we hold that it does.").

**Religious Rights Claims**

Plaintiff alleges Defendant has violated his religious rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") in various ways. However, RLUIPA applies only to suits against states and does not create a cause of action against federal agencies or agents. *Madison v. Riter*, 355 F.3d 310, 315 (4th Cir. 2003). The Religious Freedom Restoration Act ("RFRA"), however, is similar to RLUIPA and initially applied to both the states and the federal government, but the Supreme Court concluded in *City of Boerne v. Flores*, 521 U.S. 507 (1997), that RFRA exceeded Congress's remedial powers over the states under section 5 of the Fourteenth Amendment. *See id.* at 532–36. Congress "sought to avoid *Boerne*'s constitutional barrier by relying on its Spending and Commerce powers" in subsequently enacting RLUIPA. *Madison*, 355 F.3d at 315. Thus,

Congress has created a parallel statutory scheme, using virtually identical language, in which "RFRA continue[s] to apply to the federal government" and RLUIPA "mirror[s] the provisions of RFRA" in suits against the states concerning institutionalized persons. *Id.* Because of the close connection in purpose and language between the two statutes, courts commonly apply "case law decided under RFRA to issues that arise under RLUIPA" and vice versa. *Redd v. Wright*, 597 F.3d 532, 535 n.2 (2d Cir. 2010). In an abundance of caution and liberally construing Plaintiff's pro se Complaint, the Court will treat the Complaint as alleging Defendant has violated Plaintiff's religious rights under RFRA.

**Motion to Dismiss Standards**

### Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction filed pursuant to Fed.R.Civ.P. 12(b)(1), raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991). A motion to dismiss for lack of subject matter jurisdiction can arise in two contexts: (1) when the moving party maintains that the complaint "fails to allege facts upon which subject matter jurisdiction can be based" or (2) when the moving party asserts that the "jurisdictional allegations of the complaint [are] not true." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). In the first situation, where the moving party asserts that the

non-moving party has failed to allege facts establishing subject matter jurisdiction, the court must assume all the facts alleged in the complaint to be true. *Id.* In the second situation, where the moving party disputes the validity of the jurisdictional allegations in the complaint, the court may look beyond the complaint and consider other evidence, such as affidavits, depositions, and live testimony. *Id.* The burden of proof in that situation falls on the plaintiff to demonstrate subject matter jurisdiction. *Id.*

**Rule 12(b)(6)**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support [his] claim and would entitle [him] to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In addition to the complaint, the court "may consider documents attached to the complaint . . . so long as they are integral to the complaint and authentic." *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing Fed. R. Civ. P. 10(c)).

With respect to well-pleaded allegations, the Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic

> recitation of the elements of a cause of action will not do.
> Factual allegations must be enough to raise a right to relief
> above the speculative level . . . .

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)); *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (noting that court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).[5]  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such

---

[5] In his motion, Defendant cites to Rule 12(b)(6) but moves for summary judgment. As Defendant requests that the Court consider evidence outside of Plaintiff's Complaint and the Court has considered such evidence, the summary judgment standard is the appropriate analysis. *See Mattress v. Taylor*, 487 F.Supp.2d 665, 669 (D.S.C. 2007).

7

that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

> (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

Defendant Helbig has moved to dismiss Plaintiff's Complaint alleging that he has not exhausted the administrative remedy process established by the BOP in regard to the allegations set forth in his Complaint.[6]  [Doc. 24 at 4.]  The Court agrees.  Plaintiff contends, however, that the administrative process is not used to "resolve constitutional issues or to consider damages" and, thus, Defendant's argument is nonsensical. [Doc. 32 at 3.]  Plaintiff also contends that, while the PLRA states that he must exhaust all administrative remedies prior to commencing suit, it does not say that he must receive a response. [*Id.*]  Lastly, Plaintiff contends that, to the extent his attempt to appeal was returned because it did not contain the requisite number of document copies, such failure was the result of Mr. Hartley tampering with his mail. [*Id.* at 4.]

---

[6] Defendant also seeks summary judgment on the merits. However, because Plaintiff failed to exhaust the administrative remedy process and this action is barred for that reason, the Court need not address the merits.

9

**Exhaustion of Administrative Remedies**

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the United States Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. . . ." *Woodford*

*v. Ngo*, 548 U.S. 81, 90 (2006). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process); *but see, Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad").

### *Exhaustion as defined by the BOP Administrative Remedy Program*

The Code of Federal Regulations, at 28 C.F.R. § 542.10 et seq., sets forth the Administrative Remedy Procedure for Inmates, which is the internal grievance procedure that must be used by BOP inmates when lodging a complaint. The grievance procedure is a multi-step process. The first step requires the inmate to file a formal written complaint with the Warden of the prison on a Form BP-9. The inmate's complaint must be filed with the Warden within twenty calendar days from the date of the offending event. 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, the inmate may appeal (using a Form BP-10) to the Regional Director of the BOP within twenty (20) calendar days of the date the Warden signed the response. If the inmate remains dissatisfied with the response, thereafter, an inmate may appeal the Regional Office's response to the General Counsel of the Bureau by completing a Form BP-11 within thirty (30) calendar days of the date the Regional Director signed the response. See 28 C.F.R. §§ 542.14 and 542.15. Appeal to the General Counsel is the final level of agency review.

See 28 C.F.R. § 542.15(a). Thus, a claim has not been administratively exhausted until it has been filed with the General Counsel.

It is well-settled that "[t]he exhaustion requirement under the PLRA has been interpreted to require prisoners to pursue administrative grievances until they receive a final denial of their claim, appealing through all available stages in the administrative process." *Gibbs v. Bureau of Prison Office*, 986 F.Supp. 941, 943-44 (D.Md.1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where the plaintiff did not appeal his administrative claim through all four stages of the BOP grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming the dismissal of a prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (a prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review). Claims that are not exhausted have been procedurally defaulted and cannot be reviewed on the merits. *Crosby v. Warden, Roxbury Correctional Inst.*, 100 F. A'ppx 343, 2004 WL 2294665, at *1 (4th Cir. Oct.8, 2004) (citation omitted). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including Section 1983. *Woodford v. Ngo*, 548 U.S. 81, 91–92 (2006).

### *Plaintiff's Attempt to Exhaust*

Defendant produced evidence that, on November 8, 2012, Plaintiff filed a BP-9 containing complaints regarding the Sukkot Tent, religious funds, grape juice, and ceremonial meal. [Doc. 24-1 at ¶ 5.] Not satisfied with the Warden's response to his

grievance, on November 30, 2012, Plaintiff filed an appeal at the regional level on form BP-10. [*Id.* at ¶ 6.]  On January 15, 2013, Plaintiff appealed to the National Inmate Appeals Coordinator by filing a BP-11. [*Id.* at ¶ 7.]  Plaintiff's BP-11 appeal was returned, however, because he failed to submit the proper number of continuation pages and copies with his BP-11 appeal. [*Id.*]  Plaintiff was advised, however, that he could resubmit the appeal in proper form within 15 days of the date of the rejection notice. [*Id.*]  Defendant submits that there is no evidence that Plaintiff ever made an attempt to resubmit his appeal in proper form and, thus, he has failed to fully exhaust the issues in his Complaint. [*Id.* at ¶ 8.]

Plaintiff contends, relying on *Brice v. Day*, 604 F.2d 664 (10th Cir. 1979), that he was not required to complete the BOP administrative remedy process because the issues he raises are constitutional, and, because he seeks damages.  [Doc. 32 at 3–4.] He contends that the BOP does not have jurisdiction to form a remedy such that the administrative remedy process would not have corrected the issues, and, thus, exhaustion would have been futile.  [*Id.*]  Plaintiff's reliance on *Brice v. Day*, 604 F.2d 664 (10th Cir. 1979), is misplaced as it is no longer good law because *Booth v. Churner*, is now the controlling law.  *See Booth*, 532 U.S. at 741 (finding that the exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings).  Plaintiff was required to complete the exhaustion requirement even where his requested relief may not have been available in the administrative proceedings.

Plaintiff further contends that he fully exhausted the BOP administrative remedy process because he did submit all four required documents—BP-8, BP-9, BP-10, and BP-11—and the PLRA does not require that he receive a response. [Doc. 32 at 3.] The BOP

13

has set out when a Request or an appeal is considered filed and when an inmate should expect a response from the appropriate official:

> If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days. If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing. If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing.

28 C.F.R. § 542.18. The inmate may consider the absence of a response within the allotted response time, including any extension, to be a denial of the Request or appeal at that level. *Id.* Thus, an inmate has exhausted a given level of the grievance process, and may proceed to the next level, if he does not receive a response at that level within the allotted response time. However, Plaintiff's argument fails because the Central Office did respond to Plaintiff's claim by returning the appeal to Plaintiff and giving him 15 days to resubmit it in proper form. Plaintiff was required to take this next step to resubmit the BP-11, but he failed to do so.

When a prison official returns a prisoner's appeal because it is deficient and directs the prisoner to remedy the deficiency and resubmit the appeal, if the prisoner fails to do so the prison administrative remedy process was not properly completed. *See Bautista-Serrano v. Clark*, C/A No. 6:11-2870-RBH-KFM, 2012 WL 3749092, at *5 (D.S.C. Aug. 1, 2012) (finding that prisoner failed to exhaust administrative remedies when he chose to

ignore the directions given to him to resubmit his grievance in proper form), *adopted by*, 2012 WL 3747601, at *3 (D.S.C. Aug. 29, 2012);*Childress v. Pettiford*, C/A No. 4:08-1001-SB, 2010 WL 412547, at *2 (D.S.C. Jan. 27, 2010) (granting motion to dismiss for failure to exhaust administrative remedies where prisoner was informed of when and how to comply with the process but failed to do so because of his own inaction), *aff'd*, 393 F. App'x 92 (4th Cir. 2010); *Randolph v. Redfearn*, No. 2:05-2249-MBS-RSC, 2006 WL 1687449, at *2 (D.S.C. June 13, 2006) (finding that defendants gave the prisoner a reasonable opportunity to file a grievance where prisoner was informed to resubmit his grievance in proper form but failed to do so); *McCloud v. Woodford*, No. 06-4845, 2008 WL 4602548, at *5 (C.D. Cal. Oct. 14, 2008).  To survive a motion for summary judgment asserting a failure to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust.  *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))).  Plaintiff did not present competent evidence that through no fault of his own he was prevented from availing himself of the BOP process.  Plaintiff's own failure to resubmit his appeal in proper form to the Central Office is the reason the administrative exhaustion process was not completed.  Accordingly, because the Court concludes Plaintiff has failed to present sufficient material facts to show he did exhaust his administrative remedies, it recommends Defendant's motion for summary judgment be granted on that ground.

### *Interference with Administrative Process*

In his Response Brief to the Motion to Dismiss, Plaintiff alleges his attempt to exhaust at the Central Office appeal level was impeded by Mr. Hartley's tampering with his mail. [Doc. 32 at 4.] Plaintiff alleges that when he submitted his appeal to the Central Office he placed the requisite number of documents in a large brown unsealed envelope and put it in the hands of Mr. Hartley, a friend of Defendant and BOP employee mail room supervisor. [*Id.*] He alleges that once he placed the envelope in Mr. Hartley's hands he was no longer responsible for the envelope or its contents, and he believes that Mr. Hartley did something with the contents of his envelope and obstructed his mail. [*Id.*] Plaintiff submitted a Declaration under penalty of perjury related to the merits of this action, but nowhere within the Declaration or attached documents does Plaintiff set forth any facts whatsoever related to his attempt to exhaust the BOP administrative remedy process regarding the allegations set forth in the Complaint. [*see,* Doc. 32-1 at 1–6; Doc. 32-2 at 1–5.] The attached documents seem to be an attempt to demonstrate that Mr. Hartley had obstructed other pieces of Plaintiff's mail—two letters from his wife. [Doc. 32-2.] Plaintiff's other alleged evidence of mail tampering appears to be a handwritten note by him on the bottom of his Central Office Rejection Notice dated 2-8-13: "Plaintiff submitted all paperwork required, I am not allowed to seal outgoing mail, once it has been placed in BOP staff's custody, plaintiff is no longer responsible. Missing paperwork seems to be an on going problem here at FCI Williamsburg. . . . This is just a continueing (sic) attempt to obstruct and impede Plaintiff's administrative remedy process. !" [Doc. 1-1 at 5.]

The Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing

16

himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process . . . , the process that exists on paper becomes unavailable in reality." *Zander v. Lappin*, 415 F. App'x 491, 492 (4th Cir. Mar.10, 2011) (*quoting Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). The district court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Id.* (quoting *Aquilar–Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir.2007)).

In this case, Plaintiff's conclusory unsworn allegations are not sufficient material evidence to demonstrate that Mr. Hartley interfered with Plaintiff's appeal to the Central Office. The Court may not consider allegations in a brief or pleading, an unsworn handwritten note, or documents related to other mail as competent evidence of what occurred in this case. *See Celotex Corp.*, 477 U.S. at 324 (finding that to survive summary judgment the nonmoving party must go beyond the pleadings and present affidavits or other competent evidence to show specific facts that there is a genuine issue for trial). Moreover, even if Plaintiff had submitted competent evidence that Mr. Hartley had lost, or tampered with, certain contents of Plaintiff's appeal to be mailed to the Central Office, Plaintiff does not contend that Mr. Hartley, or any other person, prohibited him from resubmitting his appeal and in accordance with the appeal order. Plaintiff merely chose not to resubmit his appeal as directed which does not excuse his failure to exhaust. *See Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011) (noting that "in order to show that a grievance procedure was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure").

**CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendant's motion to dismiss, motion for summary judgment [Doc. 24] be GRANTED on the ground of failure to exhaust administrative remedies.

IT IS SO RECOMMENDED.

s/ Jacquelyn D. Austin
United States Magistrate Judge

November 21, 2013
Greenville, South Carolina